Corneliu ANDRON, Plaintiff,

v.

Alberto GONZALES, Attorney General
of the United States of America,
et al., Defendants.

No. 06–3405–CV–S–GAF.

United States District Court,
W.D. Missouri,
Southern Division.

May 21, 2007.

Jonathan James Willmoth, The
McCrummen Immigration Law Group,
LLC, North Kansas City, MO, for Plaintiff.

Jeffrey P. Ray, Office of the United
States Attorney, Kansas City, MO, for Defendants.

## ORDER

FENNER, District Judge.

Presently before the Court is a Motion
for Summary Judgment filed pursuant to
Federal Rule of Procedure 56 ("Rule 56")
by Plaintiff, Corneliu Andron ("Plaintiff").
(Doc. # 23). Plaintiff petitions the Court

for a hearing on his naturalization application and requests that this Court either enter an order naturalizing him or remand the case to the United States Citizenship and Immigration Services ("USCIS") with appropriate instructions as provided by the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1447(b). *Id.* Also before the Court is a Motion to Dismiss, or in the Alternative, for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and Rule 56 by Defendants Alberto Gonzales, Attorney General of the United States; Michael Chertoff, Secretary of the United States Department of Homeland Security; Dr. Emilio Gonzales, Director, United States Citizenship and Immigration Services; Michael Jaromin, District Director United States Citizenship and Immigration Services; Robert Mueller, III, Director, Federal Bureau of Investigations ("FBI"); and the United States Attorney for the Western District of Missouri (collectively "Defendants"). (Doc. # 27). Defendants argue that the Court does not have subject matter jurisdiction over this matter, or should remand it back to the appropriate administrative agency. For the reasons stated below, Plaintiff's Motion for Summary Judgment is GRANTED and this matter is REMANDED to the USCIS to determine the matter within sixty (60) days of receiving a completed background investigation from the FBI. Defendants' Motion is DENIED.

## DISCUSSION

### I. Facts

This case arises from Defendants' purported failure to determine Plaintiff's application for naturalization in a timely manner. (Doc. # 24). Plaintiff, who is a citizen of Romania, entered the United States as a refugee and was granted permanent residence as of November 14, 1979. (Doc. # 1). Plaintiff applied for naturalization on August 27, 2004 and was interviewed May 11, 2005 at the Kansas City District Office of the USCIS. *Id.* Plaintiff passed the tests required for naturalization, but is awaiting the conclusion of the required security checks. (Doc. # 24, 27).

Applicants seeking naturalization are subject to criminal and national security background checks to ensure they are eligible for naturalization and do not pose a risk to national security or public safety. (Perry Decl. ¶ 4; *see also* Pub.L. No. 105–119, Nov. 26, 1997, 111 Stat. 2448, set forth in the historical and statutory notes to 8 U.S.C. § 1446). The required checks include a National Name Check Program administered by the FBI. *Id.* Following the events of September 11, 2001, the FBI is working through a backlog of name checks that has resulted in significant delays in processing some requests. (Scott Decl. ¶¶ 18–19). The FBI received Plaintiff's name check request April 29, 2004 but has not yet completed the check. (Scott Decl. ¶ 22). The USCIS has advised Plaintiff it is unable to adjudicate his application for naturalization until the name check is completed. (Perry Decl. ¶¶ 16–17). As a result, Plaintiff filed the present action for a hearing on his application or for an order of *mandamus*.

### II. Legal Standards

#### A. *Motion to Dismiss*

Defendants argue this case should be dismissed pursuant to Rule 12(b)(1) because § 1447(b) does not vest this Court with federal question jurisdiction to adjudicate Plaintiff's claims. (Doc. # 27). Federal courts are courts of limited jurisdiction and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Mgmt. Co. v. United States,* 4 F.3d 643, 646 (8th

Cir.1993) *citing Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *see also Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1141 (8th Cir.1998). The party asserting jurisdiction bears the burden of establishing that a cause lies within the federal court's limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). "The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case." *Bender*, 475 U.S. at 541, 106 S.Ct. 1326.

### B. Summary Judgment

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, indicates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Castillo v. Ridge*, 445 F.3d 1057, 1060 (8th Cir.2006) *citing Gipson v. Immigration and Naturalization Service*, 284 F.3d 913, 916 (8th Cir.2002). The summary judgment rule is intended "to isolate and dispose of factually unsupported claims" and should be applied to accomplish this purpose. *Prudential Ins. Co.*, 121 F.3d at 366. In the interest of promoting judicial economy, summary judgment should be granted to prevent the trial of cases lacking a genuine issue of material fact. *Inland Oil and Transp. Co. v. U.S.*, 600 F.2d 725, 728 (8th Cir. 1979).

### III. Analysis

#### A. Subject Matter Jurisdiction

Plaintiff alleges that § 1447(b) expressly grants this Court subject matter jurisdiction over his claim that his naturalization application has been unduly delayed. (Doc. # 24). That section allows an applicant to request a hearing before a district court:

If there is a failure to make a determination under section 1446 of this title before the end of the 120–day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

Plaintiff argues that the "examination" in question is the applicant interview that was completed on May 11, 2005. (Doc. # 24). In Plaintiff's view, that interview triggered the running of the 120–day period, giving this Court jurisdiction over this matter. Id. The position urged by Plaintiff has been adopted by a clear majority of the courts considering this issue. *See, e.g., Manzoor v. Chertoff*, 472 F.Supp.2d 801, 807 (E.D.Va.2007); *Khelifa v. Chertoff*, 433 F.Supp.2d 836, 840–41 (E.D.Mich.2006); *El–Daour v. Chertoff*, 417 F.Supp.2d 679, 681–82 (W.D.Pa.2005); *Hussein v. Gonzales*, 474 F.Supp.2d 1265, 1268 (M.D.Fla. 2007); *Castracani v. Chertoff*, 377 F.Supp.2d 71 (D.D.C.2005); *Shalabi v. Gonzales*, Civil No. 4:06CV866, 2006 WL 3032413 (E.D.Mo. Oct. 23, 2006); *Essa v. U.S. Citizenship and Immigration Services*, Civil No. 051449, 2005 WL 3440827 (D.Minn. Dec. 14, 2005) (unpublished); *Shalan v. Chertoff*, Civil No. 05–10980, 2006 WL 42143 (D.Mass.Jan.6, 2006) (unpublished); *Al–Kudsi v. Gonzales*, Civil No. 05–1584, 2006 WL 752556 (D.Or. March 22, 2006) (unpublished); *Daami v. Gonzales*, Civil No. 05–3667, 2006 WL 1457862 (D.N.J. May 22, 2006) (unpublished); *Meyersiek v. U.S. Citizenship and Immigration Service*, Civil No. 05–398, 2006 WL 1582397 (D.R.I. June 6, 2006) (unpublished); *Khan v. Chertoff*, Civil No. 05–00560, 2006 WL 2009055 (D.Ariz. July

14, 2006) (unpublished); *Affaneh v. Hansen,* Civil No. 3–06–267, 2007 WL 295474 (S.D.Ohio Jan. 29, 2007) (unpublished).

Plaintiff suggests the majority view is correct for three reasons. First, several courts have found that the plain language in § 1447(b) requiring the 120–day period to begin on "the date on which the examination is conducted" suggests a specific event rather than a process. (Doc. # 24 *citing Shalabi,* 2006 WL 3032413 *4; El–Daour,* 417 F.Supp.2d at 681–83; *Khelifa,* 433 F.Supp.2d at 841). Moreover, Plaintiff argues that without a set date for the examination, there would be no way to measure the 120 days, rendering that section meaningless. *Id.* Second, Plaintiff argues that the statutory distinction between the investigation and the examination suggests they are "discrete events under the statutory scheme." *Id. quoting Shalabi,* 2006 WL 3032413 *4. Finally, Plaintiff claims that the regulations promulgated by the USCIS make it clear that the investigation and the examination are separate and that the term "examination" means an individual event.[1] *Id.*

Defendants argue that the term "examination" in this section is not a single event, but in fact refers to a process that includes completion of the FBI name check. (Doc. # 27); *see Danilov v. Aguirre,* 370 F.Supp.2d 441, 443–44 (E.D.Va.2005) (finding jurisdiction-shifting provision never triggered as mandatory FBI investigation had not been completed). Defendants suggest that the language in § 1446 referred to in § 1447(b) indicates a process because the examination may include the issuance of subpoenas to compel the attendance and testimony of witnesses and the production of relevant papers, books, and documents as well as the taking of testimony. *Id.* According to Defendants, the Court lacks

jurisdiction because the 120–day period does not start until that entire process is complete, which includes Plaintiff's pending FBI background check. *Id.*

The term "examination" is undefined in the INA. Although a consensus as to the meaning of the word "examination" as used in § 1447(b) appears to be forming in the district courts, neither the Eighth Circuit nor any of its sister circuits have interpreted that statutory language. Therefore, to resolve the issues between the parties, the Court must determine the meaning of the term "examination" as used in the statute at issue.

The first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with respect to the precise question at issue. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). If the intent of Congress is clear, the Court "must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "When reviewing a federal agency's interpretation of a federal statute, a federal court must defer to the agency's interpretation only if it finds that the agency's interpretation is consistent with the plain language of the statute or represents a reasonable interpretation of an ambiguous statute." *United ed States ex rel. Zissler v. Regents of Univ. of Minnesota,* 154 F.3d 870, 874 (8th Cir.1998) *citing Chevron,* 467 U.S. at 842–45, 104 S.Ct. 2778. Whether the meaning of statutory language is plain or ambiguous is determined by referring to the language itself, the context in which it is used, and the broader context of the statute as a

---

1. For a thorough discussion of the implementing regulations see *Manzoor,* 472

F.Supp.2d at 806–08.

whole. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340–41, 117 S.Ct. 843, 136 L.Ed.2d 808(1997) (citations omitted).

■ Having thoroughly considered the language of § 1447(b), the context in which it is used, and the policy underlying the INA in general and § 1447(b) in particular, the Court finds the term "examination" as used in § 1447(b) clearly refers to the applicant's initial examination. The reference to a particular date indicates a single, specific event—the date of Plaintiff's initial examination—rather than an ongoing process. Moreover, the date of his exam is the only date an applicant could reasonably be expected to know. Tying an applicant's specific remedy for delay to a nebulous internal process would render the remedy ineffective at best and would make the statute very difficult to administer.

An interpretation of § 1447(b) that leaves an applicant with no real recourse for delay is at odds with Congress's intent in passing the statute. *Silebi De Donado v. Swacina*, No. 07–20190, 2007 WL 1417600 (S.D.Fla. May 14, 2007). While the Court acknowledges that neither of the suggested interpretations completely reconciles all of the language in § 1446 and § 1447(b), any indication that the "examination" means more than the examination of the applicant is not enough to erode the clear intent of Congress that an applicant have a cognizable remedy for delays in processing his application. Accordingly, 1447(b) gives this Court subject matter jurisdiction over Plaintiff's claim because more than 120 days have passed since Plaintiff's examination on May 11, 2005.

*B. Remand*

■ Under the terms of § 1447, the Court can either determine the matter or remand it to the USCIS with appropriate instructions. Plaintiff requests that the Court conduct a hearing on his application for naturalization or remand the matter with very specific instructions. (Doc. # 31). Defendants ask that the Court decline to intercede and remand the matter back to the USCIS. (Doc. # 27). Defendants argue that if the Court chooses to determine the matter, it will still need a complete FBI background check before it can make a decision on Plaintiff's naturalization application. *Id. citing Daami*, 2006 WL 1457862 at *6 (finding court in same position as the agency given the statutory prohibition on adjudicating an application without a complete investigation) *and Manzoor*, 472 F.Supp.2d at 808–09 (finding itself ill equipped to conduct background checks and recognizing the agency's ability to interpret the results of such checks and follow up appropriately).

In light of the circumstances of the present case and the arguments presented, the Court finds it proper to REMAND this matter to the USCIS with instructions to make a decision on Plaintiff's application within sixty (60) days of receiving a completed background check from the FBI.

### CONCLUSION

Based on the foregoing, Defendants' Motion is DENIED and Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. This matter is HEREBY REMANDED to the USCIS for resolution consistent with this Order.

**IT IS SO ORDERED.**